# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| **MILTON BAMBURG AND GETTIE SUE GOSS BAMBURG** | * | **CIVIL ACTION NO. 08-1466** |
| **VERSUS** | * | **JUDGE JAMES** |
| **AXIS ONSHORE LP, ET AL.** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) [doc. # 7], filed by defendants Axis Onshore LP; TDE Subsidiary GP, LLC; Tridimension Energy, LP; TDE Operating GP, LLC; Stanley Cooper; and James Ryan. The district court referred the motion to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons assigned below, it is recommended that defendants' motion to dismiss [doc. # 7] be GRANTED IN PART and DENIED IN PART.

## Background

On October 2, 2008, plaintiffs, Milton and Gettie Sue Goss Bamburg, filed the above-captioned "Complaint for Rescission of Sale of Securities, Return of Purchase Price, Damages and Attorneys' Fees" against defendants, Axis Onshore LP ("Axis Onshore"); TDE Subsidiary GP, LLC ("TDE Subsidiary"); Tridimension Energy, LP ("Tridimension Energy"); TDE Operating, GP LLC ("TDE Operating"); Stanley Cooper; and James Ryan. (*See*, Compl. & 2nd Suppl. & Amend. Compl., ¶¶ 1-7). The suit alleges that on October 3, 2007, plaintiffs agreed to

buy working interests in two oil and gas leases from Axis Onshore for a total purchase price of approximately $ 402,000.  (2nd Suppl. & Amend. Compl., ¶¶ 10, 18).[1]  Plaintiffs further allege that defendants Cooper and Ryan, while acting as agents of Axis Offshore, directly communicated with them in an effort to solicit the sale of the working interests.  *Id*. at ¶¶ 11 & 16.  Plaintiffs contend that Axis Onshore, Cooper, and Ryan failed to disclose all material facts and that defendants' representations and omissions influenced their decision to purchase the interests.  *Id*. at ¶ 20.  Consequently, plaintiffs seek rescission, damages, and attorney's fees under the Securities Act of 1933, 15 U.S.C. § 77a, *et seq*.; the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq*.; Louisiana Securities Law, La. R.S. 51:701, *et seq*.; and other state law remedies for intentional and negligent misrepresentation.  *Id*. at ¶¶ 21-46.  Plaintiffs also seek recovery against defendants, TDE Subsidiary, Tridimension Energy, and TDE Operating, as "controlling persons" under federal and state securities laws.  *Id*. at ¶ 47.

On January 7, 2009, defendants filed the instant motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).  (M/Dismiss [doc. # 7]). Defendants' initial motion sought to dismiss plaintiffs' complaint in its entirety because:  1) plaintiffs' claim under the Securities Exchange Act of 1934 failed adequately to allege reliance, causation, the nature of the injury, or scienter; 2) plaintiffs' claim under the Louisiana Securities Law failed to allege:  which facts were misleading or omitted, who made the misrepresentations or omissions (or when), or that defendants knew or were aware of the omitted or untrue statements; 3) plaintiffs' allegations of intentional misrepresentation were not made with

---

[1]  One lease is located in Concordia Parish, Louisiana, the other is in Adams County, Mississippi.  *Id*.

requisite particularity; 4) plaintiffs' claim for negligent misrepresentation failed to allege a legal duty or that plaintiffs relied upon the misrepresentations; 5) plaintiffs' claims under Section 12(1) of the Securities Act of 1933 and the Louisiana Securities Law for failure to register securities were deficient because they neither alleged when the purchases occurred, nor that defendants used interstate commerce to facilitate the transactions; and 6) plaintiffs' claims for controlling party liability were deficient because plaintiffs failed to allege: a primary violation of the securities laws, that the defendants had actual power over the controlled person, or that they induced or participated in the alleged violation. *Id.*

On February 27, 2009, plaintiffs filed their opposition memorandum together with a motion for leave of court to file a first supplemental and amending complaint. [doc. #s 13 & 15]. Defendants filed a reply brief that revised the bases for dismissal in response to plaintiffs' proposed amended complaint. (M/Leave to file Reply Brief, [doc. # 17]). On March 20, 2009, the undersigned denied plaintiffs' motion for leave to amend, but directed plaintiffs to file an amended complaint that either: 1) remedied the deficient allegations raised by defendants' motion to dismiss as expounded upon by the court; or 2) deleted the otherwise incurable claim(s). (March 20, 2009, Memorandum Order). The undersigned also afforded the parties an opportunity to file supplemental briefs that addressed the anticipated amended complaint. *Id.*

On March 26, 2009, plaintiffs filed a Second Supplemental and Amending Complaint that maintained all of the original claims, but which attempted to redress the issues raised by the motion to dismiss. (2ⁿᵈ Suppl. & Amend. Compl. [doc. # 21]). Nonetheless, on April 3, 2009, defendants filed a supplemental memorandum that re-urged their motion to dismiss, albeit on modified grounds. (Def. Suppl. Brief [doc./ # 25]). On April 13, 2009, plaintiffs filed a

supplemental response.  (Pl. Resp. [doc. # 28]).  The matter is now before the court.

## Discussion

### I.  12(b)(6) Standard

Federal Rule of Civil Procedure 12(b) permits dismissal where the claimant fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 234)).  In evaluating a motion to dismiss, "the District Court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.  *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278 (5th Cir. 1993) (citation omitted).  The factual allegations need not be detailed, but they must be more than labels, conclusions, or a recitation of the elements of the claim.  *Twombly, supra*. Moreover,

> the '[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)' and the non-moving party must plead 'enough facts to state a claim to relief that is plausible on its face.'  This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.

*In re Southern Scrap Material Co., LLC*, 541 F.3d 584 (5th Cir. 2008) (internal citation omitted), *cert. denied by, Southern Scrap Material Co., L.L.C. v. U.S.*, ____ U.S. ____, ____ S.Ct. ___, 2009 WL 804229 (Mar 30, 2009).

Nonetheless, a 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted."

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982).

**II. Analysis**

As discussed above, plaintiffs have filed a Second Supplemental and Amending Complaint (hereinafter, "SSAC").  "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*,  31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).  Here, the SSAC does not refer to, or adopt any earlier pleadings in this matter; thus, the sole complaint before the court is the SSAC.  The court will apply the arguments raised in defendants' motion, as subsequently modified, to the SSAC.

a)  Securities Act of 1933

The Securities Act of 1933 imposes liability, regardless of fault or negligence, on offerors and sellers of unregistered, un-exempted securities.  *See, Swenson v. Engelstad*, 626 F.2d 421, 424-425 (5th Cir. 1980) (citations omitted).  The elements of a prima facie case under § 12(1) of the Act include, "(1) the sale or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer."  *Id.*[2]

---

[2]  Although the Securities Act of 1933 Act recognizes several private causes of action, it is apparent that plaintiffs are proceeding under Section 12(1) to rescind the sales due to defendants' failure to register the securities. 15 U.S.C. § 77l(1).  Section 11 of the Act provides a remedy for purchasers of *registered* securities when the registration statement contained false or misleading information, 15 U.S.C. § 77k.  Here, plaintiffs allege that the securities were *not* registered with the Securities and Exchange Commission.  (SSAC, ¶ 21).

Section 12(2) of the 1933 Act imposes liability on any person who "'offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact.'"  *Lewis v. Fresne*,  252 F.3d 352, 357 (5th Cir. 2001).  Plaintiffs acknowledge, however, that the "crux" of their complaint lies under § 12(1). (Pl. Resp. Brief, pg. 4 [doc. # 28]).  Indeed, plaintiffs' allegations under the 1933 Act do not refer

In their original motion, defendants argued that plaintiffs' claim under the Securities Act of 1933 was subject to dismissal because the original complaint failed to allege when the securities were purchased or that they had traveled in interstate commerce. (*See*, M/Dismiss, pgs. 10-11 [doc. # 7]). Defendants later conceded that plaintiffs' proposed first amended complaint would cure the pleading defects for plaintiffs' failure to register claim under the Securities Act of 1933 and the Louisiana Securities laws. (Def. Reply Brief, pg. 2 n1 [doc. # 19]). Plaintiffs incorporated these curative allegations into the SSAC. (*See*, SSAC, ¶¶ 21-31). Accordingly, the argument is moot.

Instead, defendants now argue that the SSAC is deficient because plaintiffs failed to allege when the interests were first offered to the public. *Ingenito v. Bermec Corp.*, 376 F. Supp. 1154, 1173 (S.D. N.Y. 1974). However, the Fifth Circuit does not recognize timing of the offering as an element of a § 12(1) prima facie case. *See, Swenson, supra*.

Defendants' latest brief also advances a concern raised by the court that the transactions at issue may have been private offerings not governed by § 12. However, "[t]he so-called private offering exemption is an affirmative defense which must be raised and proved by the defendant. Whether an offering is public or private is a question of fact which must be resolved in light of the particular circumstances of each case." *Swenson, supra* (citations omitted). Moreover, although an affirmative defense may sometimes support a 12(b)(6) motion, the defense must be established by the face of the complaint itself. *See, Bank of New Orleans and Trust Co. v. Monco Agency*, 823 F.2d 888, 891-892 (5th Cir. 1987).

---

to, or incorporate the alleged false and misleading statements that form the basis of plaintiffs' claim under the Securities Exchange Act of 1934. (*See*, SSAC, ¶¶ 21-31).

Here, the SSAC asserts that the subject oil and gas interests were offered to the public in general and to "several" offerees. (SSAC, ¶ 28). These allegations do not affirmatively establish the "private offering" defense. *Compare, Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (upheld dismissal of a § 12 claim at the pleading stage because the complaint established that plaintiff was a major purchaser of the security at issue). Accordingly, the SSAC states a claim for relief under § 12(1) of the 1933 Act.

b) <u>Securities Exchange Act of 1934</u>

Section 10(b) of the Securities Exchange Act states that it is

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j.

Pursuant to its rule-making authority, the Securities and Exchange Commission made it unlawful for anyone:

> (a)     To employ any device, scheme, or artifice to defraud,
>
> (b)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Although the Securities Exchange Act does not by its terms provide a private cause of action for § 10(b) violations, the Supreme Court has recognized an implied right of action. *See, Stoneridge*

*Inv. Partners, LLC v. Scientific-Atlanta*, ____ U.S. ___, 128 S.Ct. 761 (2008) (citing

*Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13, n. 9, 92 S.Ct. 165,

30 L.Ed.2d 128 (1971)).

"To state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege, in connection

with the purchase or sale of securities[:] (1) a misstatement or an omission (2) of material fact (3)

made with scienter (4) on which plaintiff relied (5) that proximately [injured him]." *Central*

*Laborers' Pension Fund v. Integrated Elec. Services Inc.*, 497 F.3d 546, 550 (5th Cir. 2007)

(citations omitted). Of course, "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity." *ABC Arbitrage Plaintiffs Group*

*v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (quoting Fed.R.Civ.P. 9(b)).

In an effort to curb the perceived abuse of federal securities laws by private plaintiffs,

Congress enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Nathenson*

*v. Zonagen, Inc.*, 267 F.3d 400, 406 (5th Cir. 2001). The PSLRA enhanced the Rule 9(b)

threshold by requiring plaintiffs to: 1) "specify each statement alleged to have been misleading,

[and] the reason or reasons why the statement is misleading. . . .; and 2) for "each act or omission

alleged" to be false or misleading, "state with particularity facts giving rise to a strong inference

that the defendant acted with the required state of mind." *Indiana Elec. Workers' Pension Trust*

*Fund IBEW v. Shaw Group, Inc.,* 537 F.3d 527, 533 (5th Cir. 2008) (quoting 15 U.S.C. §

78u-4(b)(1) & (2)). Only the second requirement modifies the courts' traditional 12(b)(6)

analysis; that is, for purposes of scienter, the court must consider all plausible inferences that

support or oppose a "strong inference" of scienter. *Lormand v. US Unwired, Inc.*, ____ F.3d ____

, 2009 WL 941505, *9 (5th Cir. Apr. 9, 2009) (citation omitted); *see*, discussion, *infra*.

Defendants originally challenged the sufficiency of plaintiffs' §10(b)/Rule 10b-5 allegations on various grounds including the failure to adequately allege reliance, causation, injury, or scienter. In the aftermath of plaintiffs' SSAC, defendants do not re-urge their original arguments, but instead contend that plaintiffs' latest allegations do not plead fraud with sufficient particularity, and that alleged misrepresentations about future events are not actionable under federal securities laws.

The court observes that the SSAC sets forth the following affirmative misrepresentations and omission: 1) "in September or early October of 2007, Cooper and/or Ryan told Mr. Bamburg that the well that was the subject of the Concordia Parish lease was a new well," when in fact it was a "re-work" well; 2) "in September or early October of 2007, Cooper and/or Ryan represented to Mr. Bamburg that both wells would produce in excess of 500 barrels of oil per day," and 3) Cooper, Ryan, and Axis Onshore knew that the wells did not produce more than 500 barrels of oil per day, but failed to disclose this information to the Bamburgs. (SSAC, ¶¶ 33-34, 40).

Under Rule 9(b) and the PSLRA, plaintiffs must, at a minimum, "specify the alleged fraudulent statements, the speaker, when and where the statements were made, and why they are fraudulent." *See, Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006); *see also, Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, ___ F.3d ___, 2009 WL 930055 *4 (5th Cir. Apr. 9, 2009) (citations omitted). Defendants argue that plaintiffs' allegation that Cooper "and/or" Ryan made the misrepresentations does not suffice to identify which one made the statements. (Def. Suppl. Brief, pgs. 3-4 (citing *Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 277 n7 (D. Mass. 1998)). However, in *Barrie v. Intervoice-Brite, Inc.*, the Fifth

Circuit determined that plaintiff pled fraud with sufficient particularity where the complaint alleged that "false statements were made by Hammond **or** Graham, and the other knowingly failed to correct the falsehood . . ." *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 262-263 (5th Cir. 2005) (emphasis added), *modified on rehearing*, 409 F.3d 653 (5th Cir. 2005). Moreover, to the extent that the instant defendants desire additional specificity, plaintiffs have stipulated in their response that both Cooper *and* Ryan made the misstatements regarding the Concordia Parish and Adams County wells. (Pl. Resp., pg. 2 [doc. # 28]). Accordingly, each defendant is "enlightened" as to his part in the alleged fraud,[3] and has fair notice of the claims against him. *Barrie, supra*.

Defendants next contend that plaintiffs' allegations of misrepresentation regarding future events (i.e. the wells' anticipated daily production rates) are not actionable under §10(b)/Rule 10b-5. Defendants argue that plaintiffs cannot state a claim stemming from a misrepresentation of future earnings unless the plaintiffs allege that defendants knew or were severely reckless[4] in not knowing that the statement was false. (Def. Suppl. Brief, pgs. 4-5 (citing *Southland Securities Corp. v. INSpire Ins.*, 365 F.3d 353, 371-372 (5th Cir. 2004)).[5]

The PSLRA contains a safe harbor provision that precludes liability for forward-looking statements, whether written or oral. *Southland Securities Corp., supra*, (citing 15 U.S.C. § 78u-

---

[3] *See, Southland Securities Corp. v. INSpire Ins.*, 365 F.3d 353, 365 (5th Cir. 2004).

[4] *But see*, fn 10.

[5] Defendants also cited several Louisiana state court decisions. *Bass v. Coupel*, 671 So.2d 344 (La. App. 1st Cir. 1995); *Watermeier v. Mansueto*, 562 So.2d 920 (La. App. 5th Cir. 1990); and *Farwell v. Milliken & Farwell, Inc.*, 145 So.2d 644 (La. App. 4th Cir. 1962). However, these decisions were not predicated on federal securities laws. *Id.*

5(c)(1)).[6]  Pursuant to the safe harbor clause, a "forward-looking" statement is **not** actionable if:

> (1) the statement is "identified as . . . forward-looking . . .and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially. . ."; (2) it is "immaterial"; **or** (3) "the plaintiff fails to [plead] that the forward-looking statement. . . was made with actual knowledge. . . that the statement was false or misleading."

*Lormand, supra* (citing *inter alia*, 15 U.S.C. § 78u-5(c)(1)(A-B)) (emphasis added).

The instant plaintiffs do not contest that defendants' alleged misrepresentations regarding the subject wells' anticipated production rates are forward looking statements potentially subject to the safe harbor provision.  (*See*, Pl. Resp., pgs. 3-4 [doc. # 28]).[7]  Instead, plaintiffs essentially argue that defendants' reliance upon the safe harbor provision is inappropriate in the context of a motion to dismiss, and that in any event, they have alleged that defendants actually knew that the statements were false.  *Id*.[8]  As to the first point, the court observes that although by its terms, the statute requires plaintiffs to "prove" that the person making the statement had actual knowledge

---

[6]  *See also*, 15 U.S.C. § 77z-2(c).

[7]  The PSLRA defines a "forward-looking statement"as,
(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure or other financial items

(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission ..."
15 U.S.C. § 78u-5(i)(1).

[8]  There is no evidence or argument that the statements were accompanied by "meaningful cautionary statements" or were otherwise immaterial.  15 U.S.C. § 78u-5(c)(1)(A-B).

that the statement was false or misleading,[9] the Fifth Circuit has interpreted the statute to require plaintiffs to "plead" actual knowledge. *See, Lormand, supra* (quoting safe harbor provision, but substituting "plead" for "prove").

Plaintiffs further contend that even if "actual knowledge" is a pleading requirement, they have adequately pled it. (SSAC, ¶¶ 34, 40). Defendants dispute the sufficiency of plaintiffs' allegations that Cooper and Ryan possessed actual knowledge, i.e. scienter. *See, Lormand, supra* (combining actual knowledge and scienter inquiries). Although defendants' latest brief does not address the sufficiency of the scienter allegations with respect to the other alleged misrepresentation and omission, defendants did raise scienter in their motion, as did the court in the March 20, 2009, Memorandum Order. Indeed, plaintiffs must establish scienter as to each allegedly misleading statement. *Southland Securities Corp.*, 365 F.3d at 364 (citing 15 U.S.C. § 78u-4(b)(2)). Accordingly, the court will consider the adequacy of plaintiffs' scienter allegations as to each alleged misrepresentation or omission.

To adequately plead scienter in a § 10(b) action, plaintiffs must set forth facts that render "an inference of scienter at least as likely as any plausible opposing inference." *Lormand, supra* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2513 (2007). Scienter is defined as an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (quoted source omitted). Severe recklessness "comprises solely those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable

---

[9]  15 U.S.C. § 78u-5(c)(1)(B).

negligence, but an extreme departure from the standards of ordinary care." *Id.*[10]

In *Tellabs v. Makor Issues & Rights, Ltd.*, the Supreme Court addressed the pleading requirement for a "strong inference" of scienter which the Fifth Circuit recently summarized for purposes of a motion to dismiss as follows,

> [f]irst, the allegations must, as in federal pleadings generally, be taken as true. Second, courts may consider documents incorporated in the complaint by reference and matters subject to judicial notice. The facts must be evaluated collectively, not in isolation, to determine whether a strong inference of scienter has been pled. Third, a court must take into account plausible inferences opposing as well as supporting a strong inference of scienter. The inference of scienter must ultimately be "cogent and compelling," not merely "reasonable" or "permissible."

*Indiana Elec.*, 537 F.3d at 533 (citing *Tellabs*, 127 S. Ct. at 2509–10).

Finally, "omissions and ambiguities count against inferring scienter, for plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Flaherty, supra* (quoting *Tellabs*, 127 S. Ct. at 2511).

Of the three asserted misrepresentations and omission asserted in the SSAC, plaintiffs come closest to adequately pleading scienter with regard to defendants' alleged mis-characterization of the Concordia Parish well as a "new" well. Plaintiffs allege that defendants, Cooper and Ryan, were experienced in the oil and gas field, and thus they appreciated the difference between a re-work well and a new well, including the fact that the former was valued

---

[10] Although the Fifth Circuit has held that the PSLRA did not eliminate "severe recklessness" as a basis for scienter generally under § 10(b)/Rule 10b-5, the court did suggest that for forward-looking statements, Congress modified the scienter definition by requiring plaintiffs to demonstrate that defendants' had "actual" knowledge. *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 409 (5th Cir. 2001), *but cf, Southland Securities Corp. v. INSpire Ins.*, (court analyzed defendants' forward-looking statements, and found that plaintiffs failed to allege facts demonstrating actual knowledge or severe recklessness). Nonetheless, even if severe recklessness suffices to demonstrate "actual knowledge" for forward-looking statements, the instant plaintiffs' allegations do not suffice. *See*, discussion, *infra*.

less than the latter.  (SSAC, ¶ 37).  Plaintiffs further allege that the difference between a new well

and a re-work well was apparent and easily ascertainable; thus, defendants knew or should have

known that the Concordia Parish well was a re-work well at the time they misrepresented this

fact to the plaintiffs.  *Id*. at ¶¶ 37-39.  However, "must have known" allegations do not suffice to

support a strong inference of scienter.  *Indiana Elec. Workers' Pension Trust Fund IBEW*, 537

F.3d at 539-540 (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002)).[11]

Likewise, "'general allegations and conclusory statements, such as stating [defendants] knew ...

adverse material' do not contribute to a strong inference of scienter."  *Indiana Elec. Workers'*

*Pension Trust Fund IBEW, supra* (quoted source omitted).[12]  Moreover, plaintiffs' attempts to

allege scienter based upon defendants' experience in the industry is analogous to alleging scienter

premised upon a defendant's position in the company -- which does not suffice.  *Abrams*, 292

F.3d at 432.[13]  Also, to the extent that plaintiffs argue that defendants could have easily

ascertained the status of the well, plaintiffs fail to identify any *specific* source for that information

that was available to Cooper and Ryan at the time they made the alleged misrepresentation.  *See,*

---

[11]  In *Plotkin v. IP Axess Inc.*, the Fifth Circuit drew an inference of scienter premised essentially upon a "must have known" allegation.  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 699-700 (5th Cir. 2005).  In that case, however, the court assumed that defendants possessed the requisite knowledge due to the magnitude of the deals at issue.  *Id*.  Those circumstances are not present here.

[12]  In fact, the Fifth Circuit has more than once remarked that "rote conclusory allegations that the defendants 'knowingly did this' or 'recklessly did that' fail to meet the heightened pleading requirements of Rule 9(b)."  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1019 (5th Cir. 1996) (citing *Melder v. Morris*, 27 F.3d 1097, 1104 (5th Cir. 1994)).

[13]  A "bare allegation about industry custom is precisely the type of conclusory allegation that motivated the heightened pleading standards of Rule 9(b) in the first place."  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1020 (5th Cir. 1996).

*Abrams, supra.*

To be sure, the court is not unmoved by plaintiffs' allegation that whether a well is new or not is a fact that could (and arguably should) be determined before making a representation regarding same. However, although plaintiffs' allegations do provide a permissible basis for an inference of fraud, they are not of the "cogent and compelling" variety required by *Tellabs*. *See, Flaherty, supra.* Accordingly, plaintiffs fail to plead scienter with requisite particularity as to the alleged "new" well misrepresentation.

Plaintiffs' scienter allegations regarding defendants' misrepresentation of the anticipated well production rates are even less specific than the "new" well misrepresentation, and thus fail for the same reasons. Plaintiffs simply allege that defendants, Cooper, Ryan, and Axis Onshore knew that the wells did not produce more than 500 barrels of oil per day, and not only failed to convey this information to plaintiffs, but also represented that the wells would produce more than 500 barrels per day. (SSAC, ¶¶ 34, 40). However, plaintiffs do not explain how or when defendants became aware of the wells' actual production rates. *See, Southland Securities Corp.*, 365 F.3d at 379 (plaintiffs failed to allege "how or when any individual actually knew the forward-looking estimate . . . was false when made"). To the extent that plaintiffs again rely upon defendants' experience in the industry to indicate that they "must have known" the current and future production rates, these allegations are not specific enough to support scienter. *See*, discussion, *supra*. Likewise, conclusory allegations of scienter or knowledge do not suffice. *Id*.

Having considered plaintiffs' scienter allegations together, the undersigned is compelled to find that they do not state facts with requisite particularity to support a strong inference that defendants knew or were severely reckless in not knowing the proper classification of the

Concordia Parish well and the actual and anticipated production rates of the two wells. *Indiana*

*Elec. Workers' Pension Trust Fund IBEW, supra.*[14]  Accordingly, plaintiffs' SSAC fails to state a

claim under the Securities Exchange Act of 1934, and the court is compelled to dismiss that

claim.[15]

    c) Louisiana Securities Laws

Plaintiffs contend that defendants violated the Louisiana Securities Law, formerly known

as the Blue Sky Laws, by 1) failing to register the subject securities; and 2) making

misrepresentations and failing to disclose material information in connection with the sale of the

securities.  *See*, La. R.S. §§ 51:705, 712 & 714; SSAC, ¶ 45; Pl. Resp., pgs. 4-5 [doc. # 28].

Defendants contend that plaintiffs' Louisiana Securities Law claims are subject to dismissal for

the same reasons that they advocated dismissal of plaintiffs' federal securities law claims.

Indeed, the Louisiana Securities Law is patterned after, and tracks the 1933 Act.  *Guidry v. Bank*

*of LaPlace*, 954 F.2d 278, 286 (5th Cir. 1992) (citation omitted).[16]  Thus, plaintiffs' Louisiana

Securities Law claims are equivalent to claims under  §§ 12(1) & (2) of the Securities Act of

1933.

The undersigned previously found that plaintiffs' allegations suffice to state a §12(1)

_____

    [14]  *A fortiori*, plaintiffs fail to adequately plead that defendants had "actual knowledge" of the wells' anticipated production rates.  Accordingly, this forward-looking statement is further protected by the PSLRA's safe harbor provision.

    [15]  Although this court will usually permit plaintiffs to amend their complaint to correct deficient, but remediable allegations, the instant plaintiffs have already endeavored more than once  to do so, and there is no indication that any further attempt would elicit any additional facts that would change the outcome here.

    [16]  Louisiana courts look to federal law and jurisprudence to interpret the Louisiana law. *State v. Powdrill*, 684 So.2d 350, 353 (La. 1996).

claim.  *See*, discussion, *supra*.  For the same reasons, plaintiffs' SSAC states a claim under state

law for failure to register the securities.  La. R.S. § 51:705; *see also, Caldwell v. Trans-Gulf*

*Petroleum Corp*., 322 So.2d 171 (La. 1975) (addressing failure to register oil and gas interest

under Louisiana Securities Law).

However, because plaintiffs did not advance a claim under § 12(2) of the Securities Act

of 1933, the court must address the sufficiency of plaintiffs' allegations under Louisiana's §

12(2) equivalent.  To prevail under the Louisiana Securities Law against a broker or salesperson

for a material misrepresentation, plaintiffs must show

> (1) the defendant made a false or misleading statement of a material fact or failed
> to state a material fact necessary in order to make the statement not misleading;
> (2) the plaintiff did not know of the untruth or omission; (3) the defendant knew,
> or in the exercise of reasonable diligence, could have known, of the untruth or
> omission.

*Ponthier v. Manalla*,  951 So.2d 1242, 1255, 06-632 , 20 (La. App. 5th Cir. 2007) (citations
omitted).

Although plaintiffs may establish liability by demonstrating that defendants had actual

knowledge of the misrepresentations or omissions, liability may also be established for

defendants' unreasonable failure to disclose the truth, i.e. negligence.  *See*, La. R.S. 51:714A(2);

*Schlesinger v. Herzog*, 2 F.3d 135, 141 (5th Cir. 1993) (scienter and reliance are not elements of a

§ 12(2) claim).

Here, the SSAC contains requisite allegations to establish a misrepresentation claim

under the Louisiana Securities Law, including allegations that defendants recklessly failed to

uncover and disclose the truth concerning the subject wells.  (SSAC, ¶¶ 32-44).

d) <u>Controlling Party Liability</u>

Section 15 of the Securities Act of 1933,[17] Section 20(a) of the Securities Exchange Act

of 1934,[18] and the Louisiana Securities Law[19] extend liability to any person who "controls" a

person who is subject to primary liability under the respective statutory scheme. Under all three

---

[17] Section 15 provides that
> [e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.

[18] Section 20(a) states that
> [e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t.

[19] The statute provides that,
[e]very person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist. There is contribution as in the case of contract among several persons so liable.

La. R.S. 51:714(B).

acts, "controlling person" liability requires, "(1) a primary violation by a controlled person; and (2) direct or indirect control of the primary violator by the defendant." *See, Trendsetter Investors, LLC v. Hyperdynamics Corp.*, 2007 WL 172627 *14-15 (S.D. Tex. Jan. 18, 2007) (discussing liability under § 20(a)) (citation omitted).[20]  Status or position alone does not automatically confer controlling person liability. *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990).  Rather, the controlling person must have at least exercised some influence over the direction of the firm. *Id.*

In the instant case, plaintiffs seek to hold defendants, TDE Subsidiary, Tridimension Energy, and TDE Operating, liable as "controlling persons." (SSAC, ¶ 47).  The SSAC alleges that TDE Subsidiary was a general partner of Axis Onshore, and that TDE Operating was a general partner of Tridimension Energy, which in turn, owned and controlled Axis Onshore. (SSAC, ¶¶ 12-15).  The SSAC further alleges that TDE Subsidiary, TDE Operating and Tridimension Energy each had the right to direct and control the activities of Axis Onshore, and that they exercised such control with respect to the acts and omissions at issue here. *Id.*[21]  Plaintiffs' allegations, albeit somewhat conclusory, suffice to state a claim for controlling person liability under the 1933 Act and the Louisiana Securities Law. *See, Wieland v. Stone Energy*

---

[20]  *See also, Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 n15 (5th Cir. 1993) (control person sections of 1933 and 1934 acts are interpreted the same); and *Powdrill, supra* (Louisiana Securities Law is interpreted in accordance with federal securities law).

[21]  Defendants contend that Axis Onshore was not organized in its present form at the time of the alleged misrepresentations, and that TDE Subsidiary, Tridimension Energy, and TDE Operating had no relationship to Axis Onshore during the relevant period. (*See*, Def. Reply Brief, pgs. 6-7 n4 [doc. # 19]).  However, this argument assumes facts outside of the complaint, which the court ordinarily does not consider in the context of a motion to dismiss. *See*, Fed.R.Civ.P. 12(d).

*Corp.*, 2007 WL 2903178, 14 (W.D. La. Aug. 17, 2007), *adopted by the district court*, 2007 WL 4403548 (W.D. La. Oct. 01, 2007).[22]   However, because the SSAC fails to state a claim for primary liability under the 1934 Act, there can be no controlling party liability under § 20(a), and dismissal the § 20(a) claim is required.[23]

e)  State Law Claims for Intentional and Negligent Misrepresentation[24]

Defendants contend that plaintiffs' claims for intentional and negligent misrepresentation are both subject to dismissal for failing to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[25]   Accordingly, the court will address the sufficiency of these claims simultaneously.

Under Louisiana law, the elements of a claim for delictual fraud or intentional misrepresentation include:  "(a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury."  *Guidry v. Tobacco Co., Inc.*,

---

[22]   Control person liability is not subject to the heightened pleading requirements of the PSLRA and Rule 9(b).  *Trendsetter Investors, LLC, supra* (citation omitted); *Wieland, supra*.

[23]   "Control person liability is secondary only and cannot exist in the absence of a primary violation."  *Southland Securities Corp.*, 365 F.3d at 383 (citation omitted).

[24]   The SSAC asserts claims for intentional and negligent misrepresentation under "Louisiana" law.  (SSAC, ¶ 45).  In their memoranda, both sides address plaintiffs' tort law claims in terms of Louisiana law, and thus implicitly agree that the substantive law of Louisiana applies to these issues.  *See, In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled), *cert. denied sub nom. Xavier University of Louisiana v. Travelers Cas. Property Co. of America*, ___ U.S. ___, 128 S.Ct. 1230 (Feb 19, 2008); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed);

[25]   The Fifth Circuit applies Rule 9(b)'s heightened pleading requirements to negligent misrepresentation claims when, as here, the parties have not separately focused upon the negligent misrepresentation claims and they are based on the same alleged facts as the fraud claims.  *Benchmark Electronics, Inc., v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).

188 F.3d 619, 627 (5th Cir. 1999) (citations omitted).  To establish a claim for intentional

misrepresentation by silence or inaction, plaintiff must further demonstrate that the defendant

owed a duty to disclose information.  *Kadlec Medical Center v. Lakeview Anesthesia*, 527 F.3d

412, 418 (5th Cir.) (citation omitted), *cert. denied by, Lakeview Anesthesia Associates v. Kadlec

Medical Center*, ___ U.S.___,129 S.Ct. 631 (2008).

> To set forth a claim for negligent misrepresentation under Louisiana law:
>
> (1) there must be a legal duty on the part of the defendant to supply correct
> information; (2) there must be a breach of that duty, which can occur by omission
> as well as by affirmative misrepresentation; and (3) the breach must have caused
> damages to the plaintiff based on the plaintiff's reasonable reliance on the
> misrepresentation.

*Id.*  (citation omitted); La. Civ. Code Arts. 2315-2316.

Allegations of fraud under Louisiana law asserted in federal court implicate the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Unimobil 84, Inc. v.

Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080

(E.D. La. Nov. 20, 2008).  However, "[m]alice, intent, knowledge, and other conditions of a

person's mind may be alleged generally."  Fed.R.Civ.P. 9(b).[26]  What constitutes sufficient

particularity for Rule 9(b) varies with the facts of each case.  *Guidry v. Bank of LaPlace*, 954

F.2d 278, 288 (5th Cir. 1992).  At a minimum, however, Rule 9(b) requires a plaintiff pleading

fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when

and where the statements were made, and explain why the statements were fraudulent."

*Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002)

(quoted sources and internal quotation marks omitted).

---

[26]  The PSLRA's stricter requirements for pleading scienter do not apply to state law
fraud claims. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008).

In the instant case, plaintiffs allege that defendants, Cooper and Ryan, made certain false statements in September or early October 2007, via interstate telephone calls and mailings that defendants knew to be false, and that plaintiffs relied upon to their detriment. (*See*, SSAC, ¶¶ 29, 32-44, 46). These allegations satisfy Rule 9(b) pleading requirements. *See, Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (pleadings satisfied who, what, when, where, and why requirements). Moreover, the complaint alleges sufficient facts to establish that defendants, Cooper and Ryan, breached a duty that they owed to plaintiffs.[27] Accordingly, plaintiffs' complaint states a claim for negligent and intentional misrepresentation under Louisiana law.

## III. Conclusion

For the reasons set forth above,

**IT IS RECOMMENDED** that the motion to dismiss [doc. # 7] filed by defendants, Axis Onshore LP; TDE Subsidiary GP, LLC; Tridimension Energy, LP; TDE Operating GP, LLC; Stanley Cooper; and James Ryan, be **GRANTED IN PART**, and that judgment be entered in favor of said defendants **DISMISSING WITH PREJUDICE** plaintiffs' claims under the Securities Exchange Act of 1934.

**IT IS FURTHER RECOMMENDED** that defendants' motion to dismiss [doc. # 7] otherwise be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

---

[27] "Although a party may keep absolute silence and violate no rule of law or equity, ... if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to [disclose] the whole truth." *Kadlec Medical Center*, 527 F.3d at 419 (citing *Am. Guar. Co. v. Sunset Realty & Planting Co.*, 208 La. 772, 23 So.2d 409, 455-56 (La. 1944)).

ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 28th day of April 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE